## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CC-00968-SCT

*TAMMIE F. HODNETT*

*v.*

*MISSISSIPPI DEPARTMENT OF WILDLIFE,*
*FISHERIES AND PARKS*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TERRYL K. RUSHING |
| ATTORNEY FOR APPELLEE: | WILLIAM DOUGLAS MANN, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | REVERSED - 11/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/1/97 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE FACTS AND CASE

In June 1993, Tammie Hodnett was hired by the Mississippi Department of Wildlife, Fisheries, and Parks (the "Department") as an area manager for the Lake George Wildlife Management Area ("Lake George") in Yazoo County, Mississippi. Lake George is an 8,000 acre former soybean-cotton-milo field that the Department has contracted with the Corps of Engineers to maintain as a wildlife area. The duties of an area manager include most of the physical work done on the wildlife management areas, such as preparing beaver traps and bluebird boxes. The Lake George area required substantial farming work as well, and Hodnett was hired by Bill Thomason, director of the wildlife bureau of the Department, in part based upon the fact that she had grown up on a farm. Hodnett's duties also entailed her assisting during hunting season at the Mahannah and Twin Oaks wildlife management areas, both of which were more heavily forested areas than the Lake George area.

At the time Hodnett was hired, three other area managers were hired to work on Twin Oaks and Mahannah: Brian Ballinger, Darrell Dew, and Ricky Flint. All three areas were supervised by Don Brazil, a wildlife biologist with the Department. As supervisor, Brazil's duties required him to travel from area to area in order to supervise the work of the area managers, including Hodnett. The relationship between Hodnett and Brazil was somewhat strained from the beginning of her work at Lake George in October, 1993. Thomason testified that Brazil complained of Hodnett's work performance within the first three months that she worked for him after leaving the academy.

Hodnett's initial duties required her to work at Mahannah and Twin Oaks areas during the hunting season, given that the Lake George area had only limited forested areas. Hodnett testified that she was accordingly unable to devote extensive amount of time to her duties at Lake George, but Brazil nevertheless considered her performance at Lake George to be substandard. Brazil cited instances in which Hodnett was late in reporting to operate a check station in Mahannah, in which she failed to timely erect a check station at Lake George, as well as several instances of allegedly tardy or otherwise deficient performance.

On September 26, 1994, Hodnett was notified that her employment with the Department was terminated effective September 30, 1994. Hodnett appealed her termination, alleging sexual discrimination on the part of the Department. A hearing was held with regard to her complaint on February 23 and 24, 1995. On March 10, Hearing Officer Falton O'Mason entered his decision finding that Hodnett had been discriminated against, and he ordered Hodnett to be reinstated with back pay. On August 30, 1995, the Mississippi Employee Appeals Board ("Appeals Board"), sitting *en banc*, affirmed the Hearing Officer's order. The Department petitioned the Circuit Court of Hinds County for a *writ of certiorari*, which was granted on October 4, 1995. On August 6, 1996, the Circuit Judge entered his order reversing the prior decisions of the Hearing Officer and the Appeals Board. Hodnett timely filed an appeal before this Court.

## II. ISSUES

> **A. Whether the decision of the Circuit Court of Hinds County, which found insufficient evidence to affirm the decisions of the hearing officer and the Employee Appeals Board in this case but failed to cite specific examples of inadequacy of the facts or of facts that support the Circuit Court's determination, properly applied the stringent standard of review under which agency determinations are to be evaluated on appeal.**

> **B. Whether the incidents of disparate treatment found in this record adequately support the determinations of the hearing officer and the Employee Appeals that Department of Wildlife discriminated against Tammie F. Hodnett because of her sex.**

This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's findings must remain undisturbed unless said findings 1) are not supported by substantial evidence, 2) are arbitrary or capricious, 3) are beyond the scope or power granted to the agency, or 4) violate one's constitutional rights. *Sprouse v. Miss. Employment Sec. Com'n*, 639 So.2d 901 (Miss. 1994). The circuit court reversed the ruling of the Board, finding that Hodnett's dismissal was "based substantially on (her) work performance rather than sexual discrimination by her fellow area managers and supervisors." The circuit court thus concluded that the Board's ruling was

unsupported by substantial evidence, and this Court must determine whether this conclusion was correct.

The record reveals several instances in which Hodnett failed to perform various tasks assigned to her or in which the tasks were not performed on time. Brazil documented at least three times in which Hodnett was late for work, although he noted that he did not see Hodnett often and he felt that the actual number of instances of tardiness was higher. Darrell Dew, area manager at Twin Oaks, testified that, on one occasion, Hodnett was at least three hours late in relieving him. Hodnett disputed this assertion in her testimony, however, stating that there was "no set time" for her to report on that occasion and that she was not significantly tardy.

Brazil testified that he asked Hodnett to install two directional signs in November and that he had purchased the signs for her, but "as of December 18th, the date I recall, she had not done it, and they were still in the back end of her truck." Brazil testified that Hodnett also failed to complete the process of getting bids and specifications for pieces of equipment that she needed in the area, that she failed to prepare a map for the beaver dams, and that she failed to timely install a check-in station. Brazil conceded, however, that the installation of the check-in station was not a task which Hodnett could have performed alone, and Hodnett testified that she did not receive needed assistance from other area managers.

Brazil did not approve of the quality of much of the work which Hodnett did perform, citing errors in letters which she wrote and various mistakes which she made in the performance of her administrative duties. Brazil accordingly gave Hodnett an unsatisfactory evaluation of 1.97 out of a possible 5, which evaluation led in part to her dismissal. Brazil testified that Hodnett's dismissal was based on the "accumulation of irresponsible acts and lack of incentive or -- or she did not put the -- her best foot forward, if I might add. She did not attempt to do a good job."

Hodnett testified that one reason that she was unable to complete some of the tasks assigned to her under Brazil's PIP was the flooding of the Lake George area in the Winter and Spring of 1994. Brazil and Thomason testified, however, that they did not consider the flooding in the Lake George area to be a valid excuse for Hodnett's failure to complete her assigned tasks. Hodnett also notes that she was required to spend approximately one-third of her time assisting in the Mahannah and Twin Oaks area, which fact, she asserts, limited the amount of work which she could perform at Lake George. Brazil conceded that Hodnett did perform some of the tasks assigned to her, such as purchasing beaver traps, placing boundary markers along the Lake George area, and setting up bluebird boxes.

The record does contain indications that Hodnett was treated differently or rudely on occasion based on her status as a woman. Flynt did not deny that he once made a statement to Hodnett when she was lifting something that she might "strain her ovaries." In addition, Hodnett testified that she often observed Brazil assisting the other area managers at their locations, but that he rarely came to Lake George to assist her. She testified further that "several times that Don and the other managers got together, and I was excluded. I wasn't included in anything, like the deer health checks, that they went on." Hodnett's testimony described a work atmosphere of exclusion, with the male employees supporting and assisting one another but failing to provide her with needed advice and assistance.

After observing the conflicting testimony and evidence, the Hearing Officer concluded that Hodnett's allegations of discrimination had merit, writing in his ruling that:

Having heard the testimony of witnesses and observed their demeanor, it is apparent that there was never any effort by the other Area Manager to include or involve the Appealing Party in any of the group activities, nor was there any testimony that she was involved in any discussions with and between the other Area Managers about their mutual problems in the operation and administration of the management of a wildlife area. The two day testimony did not reveal that there was any evidence of cooperation exhibited by any of the other Area Managers toward the Appealing Party. It is very apparent to this Court, that the Appealing Party, the only female Area Manager employed by the DWF&P, was expected to be an outstanding Area Manager, unfortunately, she is not an outstanding Area Manager. (S)he is, in the opinion of this Court a competent and fairly successful Area Manager, in spite of the discrimination and lack of cooperation she faced. . . . It is clear to the Court from the testimony, that had she been any one of the male area managers, her evaluation would have been different and it would not have been the basis for termination. It is the opinion of the Court and the Court finds as a fact, the Appealing Party was discriminated against because of her sex; that her termination was the result of that discrimination; that she be reinstated, with all back pay and benefits from September 30, 1994. So ordered, this the 10th day of March, 1995.

This Court concludes that the ruling of the Hearing Officer and the Appeals Board can not be said to be arbitrary and capricious or unsupported by substantial evidence. The Hearing Officer placed particular emphasis in his ruling upon the "demeanor" of the witnesses before him, and this Court does not have the benefit of observing the demeanor of the witnesses. The ability of the hearing officer to observe the demeanor and testimony of the witnesses is particularly important in the present case, given that Hodnett's allegations of a discriminatory work atmosphere can not be easily evaluated on the basis of a written record alone.

The record in the present case is largely one of conflicting testimony. The record contains a number of allegations of deficient work performance on the part of Hodnett, but Hodnett provides explanations for most of the deficiencies. The Hearing Officer concluded that Hodnett was not an exemplary employee, but that Hodnett was not provided with needed assistance and support from the beginning of her employment with the Department. Under the facts of the present case, this Court can not conclude that the ruling of the Hearing Officer and of the Appeals Board is unsupported by substantial evidence and/or arbitrary and capricious, and the ruling of the Employee Appeals Board reinstating Hodnett with back pay is accordingly affirmed.

**REVERSED AND THE RULING OF THE EMPLOYEE APPEALS BOARD IS REINSTATED.**

**SULLIVAN, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., NOT PARTICIPATING.**